UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DRYWALL TAPERS AND POINTERS OF
GREATER NEW YORK LOCAL UNION 1974,
AFFILIATED WITH INTERNATIONAL UNION
OF ALLIED PAINTERS AND ALLIED TRADES,
AFL-CIO,

                    Petitioner,

- against -

TIGER CONTRACTING CORP. A/K/A TIGER
CONTRACTING CORPORATION,

                    Respondent.

21-cv-4535 (JGK)

MEMORANDUM OPINION
AND ORDER

---

JOHN G. KOELTL, District Judge:

    The petitioner, Drywall Tapers and Pointers Local 1974, (the "Union"), affiliated with the International Union of Allied Painters and Allied Trades, AFL-CIO, brought this action seeking to confirm an arbitration award (the "Award") pursuant to Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), as amended, 29 U.S.C. § 185.[1] The Award, issued on February 9, 2021, was rendered pursuant to a collective bargaining agreement (the "CBA") between the Union and the respondent, Tiger Contracting Corp. a/k/a Tiger Contracting Corporation ("Tiger").

---

[1] The petitioner also sought to confirm the arbitration award under Section 9 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 9. However, "arbitrations in the labor context are governed by the [LMRA] rather than the FAA," 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs., 520 F. Supp. 3d 588, 606 (S.D.N.Y. 2021), and the Court therefore does not consider the petitioner's claim for relief under the FAA, see Trs. for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Odessy Constructioncorp, No. 14-cv-1560, 2014 WL 3844619, at *1 n.1 (S.D.N.Y. Aug. 1, 2014) (collecting cases).

1

The petitioner now moves for summary judgment seeking confirmation of the Award. This motion is unopposed. The respondent has not responded to the motion and has failed to respond to Orders of the Court. For the reasons that follow, the petitioner's motion is **granted**.

I.

The following facts are undisputed.

On February 22, 2019, the respondent, Tiger, entered into an agreement with the Association of Wall Ceiling & Carpentry Industries of New York, Inc. (the "Association"), designating the Association as its bargaining agent in the negotiation and execution of a CBA with the petitioner, the Union. See ECF No. 2-2, at 66-67. Among other things, the agreement provides that Tiger waives the right to approve the negotiated CBA and that Tiger agrees to be automatically bound by the CBA. Id.

On September 28, 2020, the Association and the Union entered into the operative CBA. See id. at 54-59. As relevant here, the CBA requires that disputes between members of the Union and Tiger be submitted to final, binding arbitration by the Union's Joint Trade Board ("JTB"), id. at 25-32, and requires that all persons hired by Tiger to perform tapers', finishing, and pointers' work become and remain members of the Union as a condition of their employment, id. at 56; see also id. at 8, 10. An additional agreement between the Association

and the Union (the "Trade Agreement") provides the applicable penalty schedule in the event that the latter provision is breached. ECF No. 2-1, at 2 n.1; see ECF No. 2-3, at 33. Specifically, the Trade Agreement prescribes that in the event that Tiger hires a non-Union employee, Tiger would be fined $2,000 for each non-Union employee plus $1,000 in liquidated damages for the first offense; for the second offense, Tiger would be fined $5,000 for each non-Union employee hired plus $1,500 in liquidated damages, and, in addition, the Union's Joint Trade Committee would have the discretion to appoint 50% of the Union's members to all jobs on which Tiger is performing work. Id.[2]

On December 10, 2020, representatives from the Union observed one non-Union employee performing work for Tiger that was covered by the CBA. See ECF No. 2-1, at 3. On December 24, 2020, representatives from the Union observed two non-Union

---

[2] The Trade Agreement appears to have been in effect from May 1, 2011 to April 30, 2019. ECF No. 2-3, at 2. A Stipulation of Agreement (the "Stipulation") was signed by the parties on April 25, 2019, wherein the parties agreed to modify the Trade Agreement and entered into a successor Trade Agreement. Id. at 109-124. The Stipulation appears to increase the penalty for hiring non-Union employees. See id. at 120. However, the JTB appears to have followed the older penalty schedule provided in the original Trade Agreement. See ECF No. 2-1, at 3.
    The petitioner does not appear to provide an explanation for this seeming discrepancy. However, because it is the arbitrator's construction of the contract that is dispositive, "however good, bad, or ugly," Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016) — and, for the reasons explained below, the Court finds that the arbitrator in this case was arguably construing the contract and acting within the scope of its authority — the Court need not resolve this issue.

3

employees performing work for Tiger at a different jobsite. Id. In both instances, the Union representatives confirmed that the relevant employees were employed by Tiger, that the relevant jobs were registered with the Union, and that the relevant employees were not members of the Union, all in apparent breach of the CBA. Id.

Accordingly, as required by the CBA, the Union filed a Demand for Arbitration (the "Demand") with the JTB on December 22, 2020, and again on December 31, 2020. See ECF No. 2-4. The Demands were mailed to Tiger by certified mail and notified Tiger that, if Tiger failed to appear on the date scheduled for the hearing, the JTB would issue a decision in Tiger's absence. Id.; see also ECF No. 2-1, at 2.

The JTB held a hearing on January 27, 2021. Id. Tiger did not send any representatives to the hearing. See id. at 3.

Following the hearing, on February 9, 2021, the JTB issued the Award, finding that Tiger had violated the CBA and the Trade Agreement by hiring non-Union employees for work covered under the CBA, and directing Tiger to submit payment for a fine in the amount of $12,000 and $2,500 in liquidated damages. Id. at 3, 5-7. The JTB also confirmed that the Union had the authority to appoint 50% of its members to all jobs on which Tiger is performing work and that are covered by the CBA. Id. A copy of

the Award was served on Tiger. ECF No. 2-5; ECF No. 2-6; see also Rule 56.1 Statement ¶ 9, ECF No. 11.

Tiger has failed to comply with the terms of the Award, id. ¶ 10, and has not commenced any action seeking to vacate or modify the Award, id. ¶ 11.

On May 20, 2021, the Union filed a petition in this Court to confirm the Award. ECF No. 1. Tiger failed to respond to the petition despite being served with the petition. ECF Nos. 7-8. On July 8, 2021, the Union moved for summary judgment seeking to confirm the Award. ECF No. 9. On October 4, 2021, because Tiger had failed to respond to the motion, the Court extended the time for Tiger to respond and warned that, if Tiger failed to respond to the motion, the Court would decide the motion for summary judgment on the papers. ECF No. 14. Tiger did not respond.

## II.

### A.

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).[3] The substantive law governing the case will

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphases, internal quotation marks, and citations in quoted text.

identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is "any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party." 36 Convent Ave. HDFC v. Fishman, No. 03-cv-3998, 2004 WL 1048213, at *2 (S.D.N.Y. May 7, 2004) (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994)).

If the party opposing summary judgment does not respond to the motion, the Court may "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). However, even where the nonmoving party fails to respond to a motion for summary judgment, the Court

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be

denied even if no opposing evidentiary matter is presented.

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). Accordingly, even if the motion for summary judgment is unopposed, the motion "must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." Id.

### B.

"Section 301 of the LMRA provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." PSC Cmty. Servs., 520 F. Supp. 3d at 601. The Court's review of an LMRA arbitration award is "narrowly circumscribed and highly deferential — indeed, among the most deferential in the law." A&A Maint. Enter., Inc. v. Ramnarain, 982 F.3d 864, 868 (2d Cir. 2020). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of [the arbitrator's] authority," that the Court is "convinced [the arbitrator] committed serious error does not suffice to overturn [the arbitrator's] decision." Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 713 (2d Cir. 1998). Accordingly, the arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. U.S. Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

### III.

In this case, the JTB held a hearing, deliberated on the facts presented, and ultimately found the respondent guilty of hiring non-Union employees in violation of the CBA. Based on the evidence, and pursuant to the Trade Agreement, the JTB assessed a fine in the amount of $12,000 and $2,500 in liquidated damages against Tiger, and determined that the Union had the authority to appoint 50% of its members to all jobs on which Tiger is performing work and that are covered by the CBA. There is no indication from this Award that the arbitrator, the JTB, acted beyond the scope of its authority. Nor is there anything to suggest that there was less than a colorable justification for the Award. Rather, the Court is satisfied that the JTB was at least arguably construing or applying the CBA and acting within the scope of its authority. This suffices under the LMRA.

Accordingly, "[b]ased on the limited review that is appropriate of an unopposed petition to confirm an arbitration award," the Court finds that there is no genuine dispute of material fact, and the petitioner is entitled to judgment as a matter of law. See N.Y.C. Dist. Council of Carpenters v. Reilly Partitions, Inc., No. 18-cv-1211, 2018 WL 2417849, at *3 (S.D.N.Y. May 29, 2018); Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Stop & Work Constr., Inc., No. 17-cv-5693, 2018 WL 324267, at *2 (S.D.N.Y. Jan. 5, 2018). The

petitioner's motion for summary judgment to confirm the Award is **granted**.

**IV.**

In its original petition to this Court, the petitioner also sought judgment to recover attorney's fees and costs expended in this action. Courts in this district have observed that "courts have routinely awarded attorney['s] fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." Trs. of N.Y. Dist. Council of Carpenters Pension Fund v. All. Workroom Corp., No. 13-cv-5096, 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013).

An award of attorney's fees is appropriate in this case. See, e.g., Drywall Tapers & Pointers of Greater N.Y. Loc. Union 1974, IUPAT, AFL-CIO v. CEI CONTRACTORS, Inc., No. 18-cv-4581, 2018 WL 4941781, at *2 (S.D.N.Y. Oct. 12, 2018). However, the petitioner has not submitted any invoices to reflect the tasks completed, the attorneys' hourly billing rates, and the total hours billed. The petitioner should submit any evidence in support of its request for attorney's fees by **March 4, 2022**. The respondent may respond by **March 18, 2022**, and the petitioner may reply by **March 25, 2022**.

9

## CONCLUSION

For the foregoing reasons, the petitioner's motion for summary judgment is **granted**.

The petition to confirm the arbitration award is **granted**. The petitioner is entitled to $14,500, plus an award of attorney's fees and costs. The parties should submit evidence in support or in opposition to the request for attorney's fees and costs in accordance with the above schedule.

The Clerk is directed to close Docket No. 9.

SO ORDERED.

Dated:  New York, New York
        February 17, 2022

_____
John G. Koeltl
United States District Judge